**COMMONWEALTH of Pennsylvania**

v.

**Henry H. DAUGHERTY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued July 9, 2003.

Decided Aug. 13, 2003.

---

Michael B. Bogush, Brookville, for appellant.

Cynthia B. Stewart, Clearfield, for appellee.

BEFORE: PELLEGRINI, Judge, and COHN, Judge, and SIMPSON, Judge.

PELLEGRINI, Judge.

Henry H. Daugherty (Property Owner) appeals from an order of the Court of Common Pleas of Clearfield County (trial court) dismissing his appeal from a summary conviction finding him guilty of a non-traffic summary offense.

Property Owner is the owner of commercial property located within the Borough of Falls Creek (Borough).[1] Property Owner's property is connected to the Borough's water system and was receiving municipal water service until July 18, 2000, at which time the Borough discontinued water/sewage service to his property due to his failure to pay his water/sewage bill since May 10, 2000.[2]

On January 15, 2002, William Kulbacki (Code Enforcement Officer), the Borough's Code Enforcement Officer,[3] issued a non-traffic citation to Property Owner for violation of the Building Officials and Code Administrators National Building Code, 1993 Edition (BOCA Code),[4] which was adopted in part by the Borough as Borough Ordinance No. 339, by failing to provide a sufficient supply of clean and potable water to his property. Following a hearing before District Justice Patrick N. Ford, Property Owner was found guilty of violating Borough Ordinance No. 339, specifically Section 2905.2 of the BOCA Code, and was sentenced to a fine, costs and restitution in the amount of $2,212.58.[5] Property Owner then filed an appeal with the trial court which affirmed the decision of the District Justice and

1. The Borough lies within the boundaries of both Clearfield and Jefferson Counties. Property Owner's property is located in that portion of the Borough within Clearfield County.

2. In this case, there is no evidence that any people live, work or congregate at Property Owner's property, and, from the record, the property appears to be a vacant commercial premises. At oral argument, though, counsel for Property Owner stated that the property was occupied.

3. The Code Enforcement Officer testified that as part of his job, he was responsible for investigating any alleged violations of the Borough's Ordinance.

4. The BOCA Code is a model set of standards and guidelines assembled and adopted by an international organization of builders and code administrators.

5. Section 102(C) of Borough Ordinance No. 339 amended the BOCA Code's penalties provision to provide:

Penalties. Any person who shall violate a provision of this code or shall fail to comply with any of the requirements thereof or who shall erect, construct, alter or repair a building or structure in violation of an approved plan or directive of the code official, or of a permit or certificate issued under the provisions of this code, shall be, upon

dismissed Property Owner's appeal. This appeal followed.[6]

 On appeal, Property Owner initially contends that the trial court erred in not quashing the citation because the Code Enforcement Officer was not formally designated by law as an individual vested with the power to issue a citation for a violation of a municipal ordinance, i.e., the Code Enforcement Officer was not a law enforcement officer as that term is defined by Pa. R.Crim.P. 402. Pa. R.Crim.P. 402 provides for persons who shall use citations stating, "[l]aw enforcement officers shall ordinarily institute summary proceedings by citation." The comment[7] to Rule 402 provides, in relevant part:

It is intended that a wide variety of officials will have the authority to issue citations and shall do so as provided in these rules. Such authority is, of course, limited by the extent of the enforcement power given by law to such officials.

---

conviction, sentenced to a fine of not more than one thousand dollars ($1,000.00) plus costs and, in default of payment of said fine and costs, to a term of imprisonment not to exceed thirty (30) days.

6. Our scope of review of a trial court's determination on appeal from a summary conviction is limited to determining whether there has been an error of law or whether the findings of the trial court are not supported by competent evidence. *Commonwealth v. A.D.B.*, 752 A.2d 438 (Pa.Cmwlth.2000).

7. Explanatory comments of committee that worked on a rule of criminal procedure may be consulted in the rule's construction and application by a court. *Commonwealth v. Lockridge*, 570 Pa. 510, 810 A.2d 1191 (2002).

8. How to characterize prosecutions for violations of municipal ordinances has been equally troublesome. At common law, an action brought by the municipality for the violation of a municipal ordinance was considered a civil suit for penalty, and the normal civil burdens applied. That issue was so well-settled that in *Commonwealth v. Carter*, 36

Pa. R.Crim.P. 103 defines a "Law Enforcement Officer" as "any person who is by law given the power to enforce the law when acting within the scope of that person's employment." Although he recognizes that the comment to Pa. R.Crim.P. 402 provides that a wide variety of officials will have the authority to issue citations, Property Owner argues that the Commonwealth had to establish that Mr. Kulbacki, the Borough's Code Enforcement Officer, was vested by law, by the Township to issue a summary criminal citation to enforce the BOCA Code, and the Commonwealth, having failed to establish that the Code Enforcement Officer was authorized "by law" to do so, made the citation that was issued invalid.

Under Pa. R.Crim.P. 402, while it is clear that the person who issues a citation must be authorized to do so by "law," how that person is designated has been troublesome.[8] In *Department of Environmental*

---

Pa.Cmwlth. 569, 377 A.2d 831, 832 (1977), we stated:

It has long been settled in this Commonwealth that an action instituted for violation of a municipal ordinance is a civil proceeding. *Commonwealth v. Ashenfelder*, 413 Pa. 517, 198 A.2d 514 (1964); *York v. Baynes*, 188 Pa.Super. 581, 149 A.2d 681 (1959). As we stated in *City of Philadelphia v. Home Agency, Inc.*, 4 Pa.Cmwlth. 174, 177, 285 A.2d 196, 198 (1971): " 'So many practitioners have been broken on the anvil of the principle settled by the cases cited, that we feel strongly that it should not be put in question again in this case.' "

With the promulgation of the then new Pennsylvania Rules of Criminal Procedure, the anvil was broken. Through definitional changes, what we previously considered civil suits for penalty became penal in nature. As explained by our Supreme Court in *Borough of West Chester v. Lal*, 493 Pa. 387, 391, 426 A.2d 603, 605 (1981), involving a defendant found guilty for having violated a municipal ordinance which provided for imposition of fine or imprisonment in the county jail for a term not to exceed 30 days:

*Resources v. Quaker State Oil Refining Co.*, 70 Pa.Cmwlth. 107, 452 A.2d 614 (1982), we held that a Department of Environmental Resources (Department) field inspector[9] did not have the power to issue a criminal citation for a violation of regulations promulgated under the Clean Streams Law under former Rule 51 of the Pa. R.Crim.P., the predecessor to Pa. R.Crim.P. 402, which, for purposes of this discussion, is functionally equivalent.[10] Although we acknowledged that our legislature had given explicit arrest power to the Department in the context of supervision of state parks and in the Department's capacity as custodian of state forests, we held that the power to issue a citation had to be conferred by the legislature and had to be express and refused to read other "limited grants of authority to imply a general power in the Department to institute criminal proceedings by citation for violation of the other laws of the Commonwealth which it has a duty to enforce." *Id.* at 617. *See also Commonwealth. v. Domin*, 684 A.2d 211 (Pa.Cmwlth.1996) (township sewage enforcement officer not authorized to issue citations for violations of the Clean Streams Law); *Commonwealth v. Theodorou*, 777 A.2d 1203 (Pa. Cmwlth.2001) (township engineer did not have authority to issue citation absent evidence that board of supervisors expressly delegated that authority).

However, in *Commonwealth v. Joki*, 330 Pa.Super. 406, 479 A.2d 616 (1984), the Superior Court did not adopt the view that the power had to be expressly conferred.

The Pennsylvania Rules of Criminal Procedure define "criminal proceedings" as including "all actions for the enforcement of the Penal Laws." Pa. R.Crim.P. 3(g). The penal laws include "any ordinances which may provide for imprisonment upon conviction or upon failure to pay a fine or penalty." Pa. R.Crim.P. 3(1). An ordinance is a "legislative enactment of a political subdivision." Pa. R.Crim.P. 3(g). These definitions (which were in effect in 1976) remove any doubt as to the nature of the instant proceedings-they are criminal proceedings. The Supreme Court again addressed this issue in *In Re Investigating Grand Jury*, 496 Pa. 452, 460–461, 437 A.2d 1128, 1132 (1981):

(Cite as: 142 Pa.Cmwlth. 627, 634, 598 A.2d 105, 109)

Under Rule 3, "criminal proceedings" include "all actions for the enforcement of the penal laws." Pa. R.Crim.P. 3(g). "Penal laws" are defined as "all statutes and embodiments of the common law which establish create or define crimes or offenses including any ordinances which may provide for imprisonment upon conviction or upon failure to pay a fine or penalty." Pa. R.Crim.P. 3(1). However, the inclusion of "ordinances which may provide for imprisonment upon conviction or upon failure to pay a fine or penalty" within the definition of "penal laws" does not make violations of such ordinances "crimes." Rather, it merely reflects the established principle that, in a civil action whose object is to penalize a civil defendant for the commission of an offense against the law, protections available to defendants in traditional criminal prosecutions may attach. (Citations omitted.)

While municipal ordinances are now considered penal if they provide for imprisonment or imprisonment is possible in "default of payment thereof," not yet squarely addressed is the effect of Pa. R.Crim.P. 456(C) that provides that imprisonment may only be ordered if the defendant is able to pay and refuses making the "in default thereof" akin to civil contempt.

9. By Official Opinion No. 76–15, June 7, 1976., the Office of the Pennsylvania Attorney General, 74 Pa. D. & C.2d 466, had previously ruled that field inspectors of the Department of Environmental Resources may institute summary criminal proceedings by the use of citations for violations of the laws administered by the Department of Environmental Resources.

10. We note that old Pa. R.Crim.P. Rule 51 provided that a "police officer" had to institute the issuance of a citation while Pa. R.Crim.P. 402 replaced "police officer" with the term "law enforcement officer."

Instead, relying on the comment to Rule 51(C) which indicates that the definition of police officers includes various law enforcement agents (such as building inspectors and other municipal code enforcement officials, truant officers, S.P.C.A. agents), the Court, in essence, adopted the position that an official had inherent power to issue citations if that person held an occupation whose duties as part of that position included issuance of citations for summary offenses. Because a zoning officer was the type of official mentioned in the comment to the Rule as having the authority to institute summary criminal proceedings, it held that a zoning officer was vested with police powers while citing within the scope of employment for purposes of Pa. R.Crim.P. 51.

■ More recently, in *Commonwealth v. Lockridge,* also dealing with Pa. R.Crim.P. 402, our Supreme Court seems to have also taken the position that the power to issue citations need not be expressly conferred, but can be inferred where the person issuing the citation has the inherent power to do so by the nature of the position that person holds and the powers of that type of office. In that case, a deputy sheriff issued a citation for the summary offense of driving with a suspended license. Even though the sheriff was not a police officer and had not been given any statutory authority to enforce any provision of the Vehicle Code, the Court held that because the sheriff had inherent power at common law to make arrests, no express authority was needed for a sheriff, although not considered a police officer, to issue citations. Our Supreme Court stated in so many words that the inherent duties of a position can confer status on the person to issue a citation even though that power has not been expressly conferred by statute.

Regarding whether a code enforcement officer has the power to issue citations under Pa. R.Crim.P. 402, in 1999, the General Assembly enacted the Pennsylvania Construction Code Act (Act), Act of November 10, 1999 P.L. 491, No. 45, 35 P.S. §§ 7210.101–7210.902. Under Section 501 of the Act, the BOCA Code was adopted as the Uniform Construction Code (Construction Code) and all municipalities were required to adopt its provisions. 35 P.S. § 7210.501. The Construction Code provided that it be administered and enforced by municipalities, among other ways, by "the designation of an employee to serve as the municipal code official to act on behalf of the municipality for administration and enforcement of this act." *Id.* Under the Construction Code, it is the mere designation of the official by the Borough that authorizes and empowers an individual to enforce the Code.

Without reaching the question of how under the Construction Code that designation can be conferred merely by the type of position a person occupies, in this case, Section 105.1 of BOCA Code, as adopted by the Borough, specifically provides that the "code official shall enforce all of the provisions of this code ..." In this case, Mr. Kulbacki is the Borough's designated Code Enforcement Officer vesting him with the authority, both by ordinance and under the Construction Code, to enforce the Borough's building code. Because the code enforcement officer has been charged with the enforcement, a code enforcement officer is a "law enforcement officer" within the meaning of Pa. R.Crim.P. 402.

■ Even if the Code Enforcement Officer was authorized to issue the citation, Property Owner then contends that the trial court erred in finding him guilty because the Commonwealth failed to make out a violation of Section 2905.2 of the BOCA Code. Section 2905.2 of the BOCA Code provides:

**Required Capacity:** Where the required capacity of potable water supply is available from public water mains at the site, every building or structure shall be supplied from such mains to provide for all service equipment.

He contends that he is connected to the water supply and just because his water was shut off for non-payment, he did not cause the potable water to no longer be available to his property. To be held in violation of Section 2905.2 of the BOCA Code, he argues that violations should be limited to persons who have refused, hindered or obstructed the flow of potable water from the public mains in a physical manner or who refuse to connect, and because he had done none of those things because his service was disconnected against his wishes, he did not violate that provision.

Section 2905 of the BOCA Code provides that persons occupying buildings should be provided with potable water and how those connections from both public, and where, not available, from private water supplies are to be made. Section 2905.1 of the BOCA Code states, in part: that "[e]very building in which people live, work or congregate shall be provided with a supply of clean and potable water ..." On the other hand, what Section 2905.2 does is provide that where there is a public water supply, a connection has to be made to that system and water from other sources cannot be provided. In this case, there is no dispute that Property Owner is physically connected to the Borough's water main and is fully capable of receiving water through the Borough's water system. Also, there is no allegation that Property Owner receives water service from any unpermitted source such as a

private drinking water well.[11] If the building was occupied and no potable water was being supplied to occupants, then the charge should have been brought under Section 2905.1 of the BOCA Code for failure to provide potable water. Absent a showing that Property Owner was providing water from another source, no violation of Section 2905.2 of the BOCA Code has been made out because the building is connected to the public water supply even though the supplier has shut off service for non-payment.

Accordingly, the order of the trial court is reversed.

### ORDER

AND NOW, this *13th* day of *August,* 2003, the order of the Court of Common Pleas of Clearfield County, No. 02–245–CRA, dated September 9, 2002, is reversed.

CONCURRING AND DISSENTING
OPINION BY Judge COHN.

I respectfully concur in part and dissent in part from the majority opinion.

I agree with the majority's thorough analysis and holding that the Borough's Code Enforcement Officer was authorized to institute summary criminal proceedings for a violation of a municipal ordinance. However, I do not agree with the majority's conclusion that the trial court erred in finding Property Owner guilty of violating Borough Ordinance No. 339, specifically, Section 2905.2 of the BOCA Code.

Section 2905.2 sets out the requirement for building owners: Required Capacity: Where the required capacity of potable water supply is available from public water mains at the site, every building

---

11. Vance Oakes, the Borough Manager, testified before the trial court that "[i]t is the policy of the borough that the building will be connected and that they will use the public supply of water, not a private drinking water well." (September 9, 2002 Hearing Transcript at 16.)

or structure **shall be supplied** from such mains to provide for all service equipment.

(Emphasis added.) The majority interprets Section 2905.2 to "provide that where there is a public water supply, a connection has to be made to that system and water from other sources cannot be provided." (Opinion, p. 9.) Thus, the majority finds the fact that Property Owner's building is **connected** to the public water supply, even though the connection is devoid of water, is sufficient to satisfy the requirements of the Borough Ordinance. However, I believe the majority's interpretation undercuts the meaning of the phrase "shall be supplied" in Section 2905.2.

When interpreting the meaning of municipal ordinances, we are to follow the principals of statutory construction. *Borough of Fleetwood v. Zoning Hearing Board*, 538 Pa. 536, 649 A.2d 651 (1994). Words and phrases in an ordinance are to be construed in accordance with their common and accepted usage. 1 Pa.C.S. § 1903. The word "shall" has ordinarily been interpreted as being mandatory and not discretionary. *Roush v. Department of Transportation*, 690 A.2d 1278, 1282 (Pa.Cmwlth.1997). "Supply" is not defined in the ordinance, but is defined in *Merriam–Webster's Collegiate Dictionary*, 1180 (10th ed.2001), in pertinent part as meaning, "to provide for"; "to make available for use." Thus, the fact that Property Owner's building is *connected* to the Borough water supply is not sufficient to comply with these common definitions; public water must actually *flow through* the connection *onto* the property and *into* the building for it to be provided or made available for use. There is no supply of public water where the water has been turned off for non-payment.

Consequently, I believe that the trial court was correct in its determination that Property Owner was guilty of violating Section 2905.2 of the Borough Ordinance, because it was *Property Owner's action* in failing to pay his water bill that prevented the supply of public water onto the property in question.