**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**MARKS CONTRACTING, LTD.**

**Commonwealth of Pennsylvania,**
**Appellant**

v.

**Ralph A. Mase.**

Commonwealth Court of Pennsylvania.

Argued March 31, 2004.

Decided May 28, 2004.

Dennis A. Whitaker, Harrisburg, for appellant.

David J. Raphael, Harrisburg, for appellee.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, COHN, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN.

We must decide whether field inspectors employed by the Department of Environmental Protection (DEP) are vested with the authority, "by law," to issue citations for violations of what is colloquially known as the Blasting Act.[1] The Court of Common Pleas of Schuylkill County held that field inspectors are not vested with such authority by law and, so, are not "law enforcement officers" as defined in Pa. R.Crim. P. 103, and, thus, cannot issue citations under Pa. R.Crim. P. 402. Consequently, it granted an omnibus pre-trial motion dismissing numerous citations issued by DEP field inspector Richard Parsons to Marks Contracting Limited (Marks) and blaster Ralph A. Mase. DEP now appeals to this Court.

Marks is the prime contractor for the McAdoo Borough Sewer Project (Project), which is a construction project that involves installing a sanitary sewer collection system and pump station in the Borough of McAdoo. Mase is a licensed blaster serving on the Project. During the period from October 2002 through January 2003, Parsons, acting in his capacity as a DEP field inspector, filed numerous citations against both Mase and Marks, charging them with various summary offenses under the Blasting Act.[2] Marks' charges stemmed from its status as a blasting activity permittee and Mase's charges from his status as "blaster-in-charge" of the Project.[3] On June 23, 2003, Mase and Marks were convicted by a district justice of the offenses. Both filed *de novo* appeals to the common pleas court and it consolidated the matters for disposition.

On appeal, DEP argues that its field inspectors are vested by law with enforcement powers under the Blasting Act and, therefore, are "law enforcement officers" as defined under Pa. R.Crim. P. 103.[4] Consequently, it asserts that the inspectors, as "law enforcement officers," are empowered to issue citations under Pa. R.Crim. P. 402.[5] Mase and Marks, howev-

---

1. Act of July 10, 1957, *as amended,* 73 P.S. §§ 164–168.

2. Marks received 331 citations and Mase 30. Essentially, the citations concern blasting activities that violated the "allowable peak particle velocity" under DEP regulations or that failed to comply with the blasting activity permit in other ways.

3. "Blaster" is defined as a "person licensed to fire or detonate explosives in blasting operations." Section 1 of the Blasting Act, 73 P.S. § 164. A blasting operation is "the use of explosives in the blasting of stone, rock, ore or any other natural formation, or in any construction or demolition work in which six or more employees are engaged. . . ." *Id.* A blaster-in-charge is "[t]he blaster designated to have supervision and control over all blasting activities related to a blast." 25 Pa.Code § 211.101. He or she is responsible for the effects of the blast. 25 Pa.Code. § 211.154

4. The term "law enforcement officer" is defined as "any person who is *by law* given the power to enforce the law when acting within the scope of that person's employment." Pa. R.Crim. P. 103 (emphasis added).

5. This rule, entitled "Persons who shall use Citations," states that *"Law enforcement officers* shall ordinarily institute summary proceedings by citation." Pa. R.Crim. P. 402 (emphasis added). The term "law enforcement officers" was added to the definitional section of the criminal rules in 1986 pursuant to a recommendation by the Criminal Rules Committee (Committee). *See* 13 Pa. B. 2948–2965 (1983). The official comment to Rule 402 explains, "[i]t is intended that a wide variety of officials will have authority to issue citations and shall do so as provided in these rules. *Such authority is, of course, limited by the extent of the enforcement power given by law to such officials . . . ."* (Emphasis added.)

er, argue that the field inspectors are not law enforcement officers because the Blasting Act does not specifically authorize them to enforce that statute. Our review of this question of law is plenary. *Sakach v. City of Pittsburgh*, 687 A.2d 34 (Pa. Cmwlth.1996), *petition for allowance of appeal denied*, 548 Pa. 676, 698 A.2d 597 (1997). We must, thus, determine whether DEP field inspectors are vested with enforcement powers, by law. If so, they are "law enforcement officers" under the criminal rules and can issue citations.

To determine whether the field inspectors have enforcement power, conferred by statute, we must examine pertinent statutory authority. The first relevant statute is the Blasting Act itself, because it was for violations of this Act that the citations were issued. DEP did not always have enforcement authority for Blasting Act violations; in fact, when the Blasting Act became law on July 10, 1957, the Department of Labor and Industry (L & I) was charged with administering it.[6] Then, in 1981, the General Assembly shifted this authority to the Department of Environment Resources,[7] which has since been renamed DEP.[8] The Blasting Act has not been amended since the 1981 transfer of powers and duties. It contains only five sections: a definition section,[9] a section dealing with examination and licensing of blasters,[10] a provision requiring that blasting operations be conducted in accordance with regulations,[11] a provision authorizing L & I to promulgate rules and regulations to effectuate the act[12] and a penalties section.[13] The penalty section provides:

> Any person violating any of the provisions of this act, or any of the rules or regulations of the Department of Labor and Industry made pursuant thereto, shall, upon conviction in a summary proceeding, be sentenced to pay a fine of not less than ten dollars ($ 10) nor more than one hundred dollars ($ 100), and upon failure to pay such fine and costs, shall undergo imprisonment for not more than thirty days.

It is appropriate for a court to consider the explanatory comments of the Committee in the context of construing and applying the rule. *Commonwealth v. Lockridge*, 570 Pa. 510, 810 A.2d 1191 (2002); *Commonwealth v. Daugherty*, 829 A.2d 1273 (Pa.Cmwlth.2003).

The rules do not, themselves, create any substantive right to issue citations, but authorize law enforcement officers to issue citations *if, by law,* they have enforcement power. Therefore, any right that the field inspectors have to issue citations must derive from the relevant *statutory* law.

6. The Blasting Act was amended twice, once in 1961 to increase the fee for a blaster's renewal license, *see* Section 1 of the Act of July 12, 1961, P.L 581 (amending Section 2 of the Blasting Act), and again in 1966 to provide that blasting be performed in accordance with the rules and regulations of the L & I, *see* Section 1 of the Act of January 26, 1966, P.L. (1965) 1616, (amending Section 3 of the Blasting Act).

7. Reorganization Plan No. 8 of 1981—Storage and Possession of Explosives—Transfer of Powers and Duties, Act of October 28, 1981, P.L. 616, 71 P.S. 751–35 §§ 1–4. Section 2 specifically provided, "All the functions, powers and duties of the Department of Labor and Industry as set forth in the act of July 10, 1957 ... are hereby transferred to the Department of Environmental Resources."

8. Section 501 of the Conservation and Natural Resources Act, Act of June 28, 1995, P.L. 89, *as amended*, 71 P.S. § 1340.501.

9. Section 1 of the Blasting Act, 73 P.S. § 164.

10. Section 2 of the Blasting Act, 73 P.S. § 165.

11. Section 3 of the Blasting Act, 73 P.S. § 166.

12. Section 4 of the Blasting Act, 73 P.S. § 167.

13. Section 5 of the Blasting Act, 73 P.S. § 168.

Neither the penalty provision, nor any other provision in the Blasting Act, specifies *who* may initiate or prosecute criminal proceedings. Because there is no specific grant of enforcement authority in the Blasting Act, Marks and Mase argue that field inspectors have no authority.

Although there is no specific grant of authority in the Blasting Act, our inquiry does not end there. We must also examine the enabling legislation which established the agencies involved here, *i.e.,* L & I, the Department of Environmental Resources (DER) and DEP, to determine whether enforcement powers are conferred therein. L & I was created by the Act of June 2, 1913, P.L., 396, *as amended,*[14] and, under Section 8, it was expressly vested with general enforcement duties over the laws within its purview. The Act provides that, "The Commissioner of Labor and Industry ... shall cause to be enforced ... the provisions of all ... existing laws and of this act...." Later, Section 1701 of what we shall refer to as The 1923 Administrative Code[15] continued this authority in L & I, directing that it continue to "exercise the powers and perform the duties by law vested in and imposed upon" it. Thus, the authority granted to L & I in 1913 by its enabling legislation remained vested in it. While Section 3001 of The Administrative Code of 1929,[16] did repeal numerous provisions in The 1923 Administrative Code, the 1929 Code also contained a provision retaining L & I's

prior grant of enforcement authority,[17] although, like the earlier code, the 1929 Code did not, itself, contain a general grant of enforcement authority to either L & I[18] or the then-named Department of Environmental Resources.[19] Thus, the general enforcement powers, which were originally delegated to L & I in 1913, remained in effect in 1981, when its enforcement powers were transferred to the DER. In addition, and critical for our purposes, only thirty-four days after The Administrative Code of 1929 was enacted, Section 16 the Act of June 2, 1913[20] was amended. This amendment states in pertinent part:

> It shall be the duty of the Department of Labor and Industry to enforce the provisions of this act, and the rules and regulations of the said department. **Prosecutions** for violations of the provisions of this act, or the rules and regulations of the said department, **may be instituted by the Department of Labor and Industry.** . . . .

(Emphasis added). Thus, to summarize, the status of the law prior to the 1981 reorganization was that L & I had general enforcement powers of those acts under its jurisdiction (including the Blasting Act), and it had the power to institute prosecutions stemming from violations of those acts. Further, in 1929, the legislature acted to make the authority to prosecute *specific.* That was the state of the law in

---

14. 71 P.S. §§ 1441–1451.

15. Act of June 7, 1923, P.L. 498, *as amended.*

16. Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 731.

17. *See* Section 2201, 71 P.S. § 561. Section 1901–A The Administrative Code of 1929, 71 P.S. § 510–1, added by Section 20 of the Act of December 3, 1970, P.L. 834, also contained a partial transfer to the Department of Environmental Resources of the powers and duties relating to the Blasting Act, but that transfer is not important for our purposes here.

18. Sections 2201—2240 of The Administrative Code of 1929, 71 P.S. §§ 561—580.20.

19. Sections 1901–A—1937–A of The Administrative Code of 1929, 71 P.S. §§ 510–1—510–37.

20. 71 P.S. § 1445.

1981 when the authority over the Blasting Act previously vested in L & I was transferred to the Department of Environmental Resources. Thus, included in the transfer were statutorily authorized enforcement powers.

In addition to this general grant of enforcement powers, which were transferred to DER/DEP by statute, there has been a legislative trend to specifically grant enforcement authority to DEP. In legislation that pre-dates the early 1960's, the legislature, as a general rule, used the passive voice when drafting enforcement and penalties provisions. As such, it did not specifically identify *who* could institute prosecutions or enforce the legislation. *See, e.g.,* under the jurisdiction of L & I, what is colloquially known as the Stuffed Toy Manufacturing Act,[21] and the Act of August 22, 1961, P.L. 1034 (requiring a guard to be posted when a manhole is entered);[22] and, under the jurisdiction of DEP, the Pennsylvania Sewage Facilities Act,[23] the Dam Safety and Encroachments Act,[24] and the Surface Mining Conservation and Reclamation Act.[25]

Now, however, the legislative trend is to specifically identify who can institute prosecutions. For example, the General Assembly has, at least twice since the 1986 amendment to the criminal rules that established the definition of "law enforcement officer," incorporated that term into the legislation when granting authority to an agency to issue citations or enforce the acts within its jurisdiction. The two acts that now incorporate the criminal rule definition of "law enforcement officer" are under the jurisdiction of DEP, Section 9 of the Air Pollution Control Act,[26] ("Employes of the department authorized to conduct inspections or investigations are hereby **declared to be law enforcement officers authorized to issue or file citations for summary violations** under this act") (emphasis added) and Section 1306(a) of the Storage Tank and Spill Prevention Act,[27] ("Employees of the department are hereby **declared to be law enforcement officers for purposes of issuing citations for summary violations** under this act."). (Emphasis added.) This indicates a recent and clear legislative intent to vest DEP's field inspectors with the power to issue citations.

There are good reasons that support granting agency personnel enforcement authority. For example, the regulations implemented under the Blasting Act, indicate a growing need for technical specialization in order to establish the existence of violations. The regulations are highly technical and, in many cases, special equipment and expertise are necessary to determine whether a violation has occurred. In the matter *sub judice*, numerous citations were issued for blasts that "exceeded the maximum allowable peak particle velocity" at a location closest to a structure designated by the DEP as not owned or leased by the permittee. (Citation No. P4397757–0). A lay person cannot make an educated assessment as to whether such a violation

**21.** Act of July 25, 1961, P.L. 857, *as amended,* 35 P.S. §§ 5201–5209.

**22.** 35 P.S. §§ 5401–5402.

**23.** Act of January 24, 1966, P.L. (1965) 1535, *as amended,* 35 P.S. §§ 750.1–750.20a.

**24.** Act of November 26, 1978, P.L. 1375, *as amended,* 32 P.S. §§ 693.1–693.27.

**25.** Act of May 31, 1945, P.L. 1198, *as amended,* 52 P.S. §§ 1396.1–1396.19a.

**26.** Act of January 8, 1960, P.L. (1959) 2119, *as amended,* 35 P.S. § 4009. The amendment adding this language was passed in 1992.

**27.** Act of July 6, 1989, P.L. 169, *as amended,* 35 P.S. § 6021.1306(a).

occurred.[28] Police departments cannot possibly buy, maintain and correctly learn to operate all of the specialized equipment available to field inspectors to assist them in assessing whether certain statutory or regulatory standards have been violated under the numerous acts in existence. Moreover, there is no compelling reason to *require* police to be called upon to issue a citation when the officer must depend upon the information provided by agency inspectors, which, as earlier noted, is often based on highly technical testing.

The courts have also joined the trend by more broadly interpreting legislative grants of authority to include the issuance of citations by inspectors. This is in contrast to earlier case law from this Court that applied a more restrictive interpretation and required that the power to issue citations be **expressly** conferred.[29] For example, last year, Judge Pellegrini recognized that the Superior Court and the Supreme Court had *not* embraced this Court's approach, determining instead that the power to issue citations need not be expressly conferred, but can be inferred "where the person issuing the citation has the inherent power to do so by the nature of the position that person holds and the powers of that type of office." *Commonwealth v. Daugherty*, 829 A.2d 1273, 1277 (Pa.Cmwlth.2003).

In support of inferring such authority, Judge Pellegrini cited *Commonwealth v. Joki*, 330 Pa.Super. 406, 479 A.2d 616 (1984), decided before the criminal rule

changes, in which the Superior Court held that a zoning officer had police powers and could institute summary criminal proceedings, and *Commonwealth v. Lockridge*, 570 Pa. 510, 810 A.2d 1191 (2002), in which the Supreme Court held that because a deputy sheriff had inherent common law power to make arrests, he could also issue summary citations under the Vehicle Code. Using this less stringent approach, Judge Pellegrini concluded in *Daugherty* that a code enforcement officer employed by a borough could issue citations for violations of the building code. This is an example of the evolving recognition of more highly specialized law enforcement officials. This current approach provides additional support for interpreting the general legislative grant of enforcement authority of the Blasting Act to include issuing citations.

To summarize, we conclude that field inspectors acting under the Blasting Act have the power and authority to issue citations under Criminal Rule 402 based upon the general enforcement powers conferred by statute, which conclusion is supported by and consistent with the change in the criminal rules to recognize the increasing role of agency inspectors who are not police officers, the trend of the legislature to grant authority to agency inspectors to issue citations, the more flexible standards evolving under the case law and the growing technical specialization required to determine if violations have occurred. We

---

**28.** *See* Chapter 211 of Title 25 of the Pennsylvania Code, dealing with explosives, especially 25 Pa.Code § 211.151 (Prevention of damages) and 25 Pa.Code § 211.172 (Monitoring instruments).

**29.** *See, e.g., Department of Environmental Resources v. Quaker State Oil Refining Company*, 70 Pa.Cmwlth. 107, 452 A.2d 614 (1982)(under old criminal rule Department of Environmental Resources field inspector could not

issue citations under Clean Streams Law); *Commonwealth v. Domin*, 684 A.2d 211 (Pa. Cmwlth.1996) (township sewage enforcement officer could not issue citations under the Clean Streams Law); *Commonwealth v. Theodorou*, 777 A.2d 1203 (Pa.Cmwlth.2001) (township engineer could not issue citations under authority of board of supervisors without such authority being explicitly delegated by that board).

therefore reverse the order of the trial court and remand this case for trial.

Judge SMITH–RIBNER concurs in the result only.

### ORDER

**NOW,** May 28, 2004, the order of the Court of Common Pleas of Schuylkill County in the above-captioned matter is hereby reversed and this case is remanded for a trial.

Jurisdiction relinquished.

### DISSENTING OPINION BY Judge SIMPSON.

I respectfully disagree that Department of Environmental Protection (DEP) field inspectors are empowered to initiate significant criminal prosecutions without reference to law enforcement officers or judicial officers under the statute known as the 1957 Blasting Act.[1] I dissent because such power is unexpressed, unnecessary, and unwise.

First, it is undisputed that the 1957 Blasting Act does not expressly authorize agency employees to initiate criminal proceedings.[2] Significantly, the statute specifically vests civil enforcement authority by granting the agency power to suspend or revoke licenses and thereby put offending blasters out of business. Section 2 of the 1957 Blasting Act, 73 P.S. § 165. It does not, however, go further and explicitly grant criminal enforcement authority so that the agency may also seek fines and imprisonment for offending blasters. Under these circumstances, power to institute criminal prosecutions remains vested in law enforcement officers[3] and judicial officers acting as issuing authorities,[4] not in agency employees.

DEP's attempt to trace criminal enforcement authority through its predecessor agency lacks merit. The Act of June 2, 1913,[5] created the pertinent predecessor agency, the Industrial Board, which later became the Department of Labor and Industry. Section 8 of that act authorized enforcement of all "existing laws and of *this act,* and the rules and regulations of the Industrial Board hereinafter provided for."[6] Further, Section 16 of that act authorized the agency "to enforce ... *this act*" and to institute "[p]rosecutions for violations of the provisions of *this act,* or the rules and regulations of said [agen-

---

**1.** Act of July 10, 1957, P.L. 685, *as amended,* 73 P.S. §§ 164–168.

**2.** Section 5 of the 1957 Blasting Act, 73 P.S. § 168 provides:

> Any person violating any of the provisions of this act, or any of the rules or regulations of the Department of Labor and Industry made pursuant thereto, shall, upon conviction in a summary proceeding, be sentenced to pay a fine of not less than ten dollars ($10) nor more than one hundred dollars ($100), and upon failure to pay such fine and costs, shall undergo imprisonment for not more than thirty days.

**3.** Pa.R.Crim.P. 103 defines "Law Enforcement Officer" as "any person who is by law given the power to enforce the law when acting within the scope of that person's employment."

**4.** Pa.R.Crim.P. 103 defines "issuing authority" as "any public official having the power and authority of a magistrate, a Philadelphia bail commissioner, or a district justice." Judges of the courts of common pleas may act as issuing authority. 42 Pa.C.S. § 912.

**5.** P.L. 396, *as amended,* 71 P.S. §§ 1441–1451.

**6.** Section 8 of the Act of June 2, 1913, emphasis added. Section 8 was repealed by the Act of June 7, 1923, P.L. 498. Article 29 of the Act of June 7, 1923 (Repealer) repealed Section 8 but not Section 16, which remains in effect.

cy]...."[7] Subsequent amendments did not broaden relevant authority to prosecute beyond the Act of June 2, 1913, existing laws and regulations. The prosecution here does not deal with a violation of the Act of June 2, 1913, laws existing in 1913, or any regulation of the Industrial Board or the Department of Labor and Industry. Thus, there is simply no express authority for DEP to institute criminal prosecutions under the 1957 Blasting Act without reference to law enforcement officers or issuing authorities.

DEP argues authority to prosecute is implicit in Section 5 of the 1957 Blasting Act, which defines summary penalties.[8] However, penal provisions of statutes, such as Section 5, are to be strictly construed. 1 Pa.C.S. § 1928(b)(1). Where there is ambiguity in the language of a penal statute, such language shall be interpreted in the light most favorable to the accused. *Commonwealth v. Scolieri*, 571 Pa. 658, 813 A.2d 672 (2002).

The interpretation invited by DEP violates this basic tenet of statutory construction. The proper interpretation here, being most favorable to the accused, restricts authority to prosecute to those expressly provided such power by law. This conclusion is reinforced by decisions of this Court which require express legislative delegation of the authority to issue criminal citations. *See Commonwealth v. Theodorou*, 777 A.2d 1203 (Pa.Cmwlth.2001); *Commonwealth v. Domin*, 684 A.2d 211 (Pa.Cmwlth.1996); *Dep't of Envtl. Res. v. Quaker State Oil Ref. Co.*, 70 Pa.Cmwlth. 107, 452 A.2d 614, 616 (1982)("any authority in Department personnel to issue criminal citations must, therefore, be conferred by the legislation, and must be express").

Second, the criminal prosecution power DEP seeks is unnecessary because alternate methods of criminal enforcement are available. The Pennsylvania Rules of Criminal Procedure provide several procedures to initiate summary criminal prosecutions: citation, complaint, and, in rare cases, warrantless arrest. Pa.R.Crim.P. 400. While citation and warrantless arrest are available only to law enforcement officers, a non-law enforcement "affiant"[9] can "institute a criminal proceeding in a summary case by filing a complaint with the proper issuing authority." Pa.R.Crim.P. 420. As competent affiants, DEP field inspectors can enforce the provisions of the 1957 Blasting Act by filing complaints with the proper judicial officer acting as an issuing authority. The complaint is reviewed and approved or disapproved by the issuing authority, and often by the

---

**7.** 71 P.S. § 1445 (emphasis added).

**8.** DEP asserts implied authority to issue citations is supported by precedents of this Court, the Superior Court, and our Supreme Court. However, the cited cases are distinguishable. In those cases, the officer's criminal enforcement authority was derived from an express grant or common law. *See Commonwealth v. Lockridge*, 570 Pa. 510, 810 A.2d 1191 (2002) *citing Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299 (1994)(deputy sheriff's authority to issue citations based on witness statements derived from common law duties of sheriff); *Commonwealth v. Daugherty*, 829 A.2d 1273 (Pa.Cmwlth.2003)(expressed authority granted by section 105.1 of the BOCA code); *Dep't of Envtl. Res. v. Blosenski Disposal Serv.*, 97

Pa.Cmwlth. 489, 509 A.2d 978 (Pa.Cmwlth.1986)(explicit grant of authority to DEP provided by Section 104(11) of the Solid Waste Management Act); *Commonwealth v. Joki*, 330 Pa.Super. 406, 479 A.2d 616 (1984)(expressed authority for zoning officer to issue citations provided by local zoning ordinance in accordance with 53 Pa.C.S. § 10617).

**9.** Pa.R.Crim.P. 103 defines "affiant" as "any responsible person capable of taking an oath who signs, swears to, affirms, or, when permitted by these rules, verifies a complaint and appreciates the nature and quality of that person's act."

district attorney. Pa.R.Crim.P. 421. Upon approval, the issuing authority issues a summons. *Id.* Disapproval is reviewable by a judge. *See* Pa.R.Crim.P. 506(B)(2).

DEP advances the naive argument that use of the complaint procedure would imperil enforcement because district attorneys and judicial officers acting as issuing authorities lack sufficient sophistication to approve prosecutions for violations of blasting regulations. Suffice it to say that judicial officers and district attorneys routinely address prosecutions involving scientific evidence more complex than that required here. Identification by DNA analysis, hair comparison and fingerprint analysis, time-of-death estimation by forensic entomologists, cause-of-death analysis by pathologists, accident reconstruction by engineers and injury cause and severity opinion by physicians are commonplace. Moreover, as here, district justices and judges will be involved in prosecutions whether initiated by citation or by complaint. Thus, there is no reason to believe prosecutions initiated by citation will be more successful than those commenced by complaint and summons.

Importantly, DEP's conduct here is inconsistent with citation practice. Citations are intended to provide the accused with prompt notice of minor charges.[10] Here, DEP did not issue the citations until over two months after the alleged criminal conduct. Reproduced Record (R.R.) at 41a–383a. Moreover, by aggregating 331 counts against the corporate defendant and 30 counts against the individual defendant, DEP transformed the crimes from "the minor nature of summary offenses" described in the criminal rules into serious matters. For example, the corporate defendant faces fines up to $331,000, and the individual defendant faces up to 30 months in prison upon default. Both these maximum penalties exceed the maximum penalties in many court cases. 18 Pa.C.S. § 106; Pa.R.Crim.P. 103. In summary, *DEP's conduct here is more consistent with complaint/summons practice than with time-of-commission citations for minor offenses.*

Finally, from a policy viewpoint, implying criminal enforcement power in DEP is unwise. It is not the mission of this Court to expand government authority or to facilitate agency prosecutions. The delicate

---

**10.** The Criminal Rules Committee's Introduction to Chapter 4 of the Rules provides in pertinent part, with emphasis added:

> The procedures set out in the following rules governing summary cases (as defined in Rule 103) *recognize the importance of prompt notice that a summary offense is being alleged, while also taking account of the minor nature of summary offenses.* Although the law recognizes the possibility of an arrest in some summary cases, it is intended under these rules that a citation will be issued to the defendant except in exceptional circumstances (such as those involving violence, or the imminent threat of violence, or those involving a danger that the defendant will flee).
>
> Experience with citation procedures indicates that most defendants will obey summary process in summary cases. The rule

procedures here, therefore, are generally designed to favor the least intrusive means of instituting a summary proceeding. The general scheme laid out in these rules is that *normally summary cases will be instituted not by arrest, but by a law enforcement officer (as defined in Rule 103) handing a citation to the defendant at the time the offense is committed.* There may, however, be situations when it is not feasible to immediately issue a citation to the defendant; in these situations, the law enforcement officer would file a citation with the district justice. In *the situations when the affiant is not a law enforcement officer, the affiant would file a complaint with the district justice.* When either a citation or a complaint is filed with the district justice, the district justice is expected thereafter to issue a summons to the defendant.

criminal law balance between government and its citizens should not be altered except by express mandate. In lieu of specific direction to the contrary, significant criminal prosecutions should remain under the watch of experienced prosecutors and judicial officers, not agency employees.

Accordingly, I would affirm the order of the Court of Common Pleas of Schuylkill County, which concluded that DEP field inspectors lacked power to initiate this significant prosecution without prior reference to law enforcement officers and judicial officers.