IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania      :
     :
       v.      : No. 1380 C.D. 2021
     : Submitted: January 5, 2024
RDHH LP,      :
             Appellant      :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE STACY WALLACE, Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                      FILED: March 26, 2024


       RDHH LP (the Company) appeals from the November 9, 2021 order of the Court of Common Pleas of Allegheny County (trial court) adjudicating the Company guilty of 18 summary offenses for violating provisions of the Zoning Code of the City of Pittsburgh, Pennsylvania[1] (Zoning Code) by clear cutting approximately one acre of land without a land operations permit. After careful review, we affirm.

## I.      Background

       On March 24, 2021, the City of Pittsburgh's (City) Department of Permits, Licenses, and Inspections (PLI) filed six separate private criminal complaints against

---

[1]   Pittsburgh, Pa., Zoning Code (1999), *as amended*.

the Company. *See* Original Record (O.R.) at 67-70.[2] Each criminal complaint accused the Company of three separate summary violations of the Zoning Code. *Id.* First, the criminal complaints accused the Company of violating Section 924.03A of the Zoning Code, by engaging in any development or regulated activity, as defined in Chapter 1003 of the Zoning Code, "without all of the required permits, approvals, certificates and other forms of authorizations required by [the Zoning Code.]"

Second, the criminal complaints accused the Company of violating Section 1003.02 of the Zoning Code, which establishes that "[n]o land operation . . . [that] exceeds the limitations specified herein, shall be conducted or undertaken within the City unless a permit is obtained from the Code Official." Finally, the criminal complaints accused the Company of violating Section 1003.03 of the Zoning Code, which requires a land operations permit for "removal of trees, vegetation or other natural ground cover" for "an area in excess of ten thousand (10,000) square feet" "on any slope with a gradient in excess of twenty-five (25) percent, when in the opinion of the Code Official, the removal of such ground cover could affect the stability of existing slope."

A magisterial district judge held a hearing on PLI's private criminal complaints, found the Company guilty of all 18 charges, and imposed fines totaling $6,000. *See* O.R. at 12. On August 23, 2021, the Company appealed to the trial court. *Id.* at 6. The trial court conducted a summary appeal hearing on November 9, 2021. *See* Summary Appeal Transcript, 11/9/21 (S.A.T.) at 1.

At the beginning of the trial court's summary appeal hearing, Neal Price, who identified himself as the Company's assistant manager (Assistant Manager), requested a continuance. *Id.* at 3-4. When asked why he needed a continuance,

---

[2] Because the pages in the Original Record are not numbered, the page numbers herein reflect electronic pagination.

Assistant Manager stated: "I'm not the material witness that would explain. You know, the manager is the one who can best explain, you know, the entire situation. He's been having medical problems. He's had COVID within the last year, different diabetic complications but he's down in Florida." *Id.* at 4. Assistant Manager further explained: "I have no prior knowledge of this entire incident until I heard there were trees that needed cut down." *Id.* The Commonwealth opposed a continuance because it had two witnesses who were present and prepared to testify. *Id.* at 3. The trial court denied the Company's continuance request, noting the Company had ample time and corresponded with its witnesses, but did not have them present, while the Commonwealth came prepared for trial. *Id.* at 5-6, 40. As a result, the trial court proceeded with the summary appeal hearing as scheduled. *Id.*

Isaac Anderson (Inspector), a PLI construction and building inspector, testified first on behalf of the Commonwealth. S.A.T. at 7. Inspector explained the Company was being cited for removing trees on six separate parcels of land on Steuben Street in the City without a permit. *Id.* at 8. The Company owned four of those parcels, but it also approved cutting of trees on two other parcels it did not own. *Id.* at 9, 12. As of the date of the summary appeal hearing, the Company had neither applied for, nor received, a permit for its tree removal. *Id.* at 10. Inspector took photographs of the parcels showing cut tree stumps, which the Commonwealth introduced as evidence. *Id.* at 10-12. Inspector explained that numerous mature trees had been cut down, and the stumps had been left approximately two feet high. *Id.* at 14.

Michael Kelly (Arborist), a certified arborist, also testified on behalf of the Commonwealth. S.A.T. at 17-18. Arborist explained that he went to the properties in question in February 2021, June 2021, and November 2021. *Id.* at 18. Upon his

initial visit, Arborist observed that "[a]pproximately one acre of forest land had [been] clear-cut on a steep slope." *Id.* at 19. Arborist explained that tree cover is important in this area because the trees' root systems anchored the steep slopes. *Id.* at 19-20. In addition, Arborist testified the removal of tree cover in this area increased the risk of flooding and stormwater erosion. *Id.* at 20.

Arborist authored a preliminary report following his initial visit to the property. S.A.T. at 20. In his report, Arborist determined the Company cut approximately 200 trees, most of which were mature trees. *Id.* at 22. Arborist's report also contained photographs of the Company's clear-cutting activities. *Id.* at 23-24. While Arborist admitted the Company conducted its activities with "chainsaws, ropes, and other non-heavy equipment," Arborist explained the potential for negative long-term effects as a result of the Company's conduct.[3] *Id.* at 25-26.

At the conclusion of the trial court's summary appeal hearing, the trial court found the Company guilty of all charged summary violations and imposed a fine of

---

[3]  Arborist stated:

> When you have an issue where you clear-cut a section of forest, you get two to three times of regrowth that occurs immediately afterwards. The first is a flush of sucker growths from any stumps that survived as well as any young trees that are able to regenerate in the area. This, while it doesn't [sic] look good, is not a stable form of vegetation. I think the [photographs] point[] to these suckers coming out of the stumps and the small trees there are actually quite unstable. As these trees get larger, they will progressively become unstable. With the decay of the stump itself, back to the ground with the loss of the root system, leads to higher volume and higher risk. . . . [Y]ou're looking at probably five years before the first failures begin and major safety hazards will be seen.

S.A.T. at 26.

$1,000 per criminal complaint, for a total fine of $6,000.  The Company appealed the trial court's determination to this Court.

## II.    Issues

On appeal, the Company[4] presents the following five issues:[5] (1) whether the trial court abused its discretion in denying the Company's request for a continuance; (2) whether the private criminal complaints complied with the rules of criminal procedure; (3) whether the PLI imposed a burdensome application requirement by making the Company obtain a licensed architect or engineer to retroactively approve a land operations plan; (4) whether the trial court adopted an overbroad definition of "land operation;" and (5) whether "the PLI prosecution arbitrarily reject[ed] life serious defense safety issues."[6]  Appellant's Br. at 4-6.

## III.    Analysis

Where the trial court received additional evidence in *de novo* review of a summary conviction, "our standard of review is limited to considering whether the

---

[4]   As a result of the Commonwealth's failure to timely file a brief in this matter, this Court precluded the Commonwealth from filing a brief by order dated December 5, 2022.

[5]   The Company presented 11 issues in its statement of errors complained of on appeal, which it filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b).  *See* O.R. at 82-84.  In its Brief, however, the Company expressly withdrew five of these issues and combined another two.  *See* Appellant's Br. at 4-6.

[6]   While the Company included its fourth and fifth issues in its statement of errors complained of on appeal and its statement of questions presented in its brief, the Company did not support these issues with any authority or reasoning in the argument section of its brief.  *See generally* Appellant's Br.  It is not this Court's duty to develop a party's arguments.  *See Com. v. Brown*, 196 A.3d 130, 185 n.21 (Pa. 2018) (explaining that appellate courts are "neither obliged, nor even particularly equipped, to develop an argument for a party.  To do so places the Court in the conflicting roles of advocate and neutral arbiter.").  Accordingly, we conclude the Company abandoned these issues.  *Id.*

trial court abused its discretion or committed an error of law." *Com. v. Halstead*, 79 A.3d 1240, 1242 (Pa. Cmwlth. 2013).

**A. Denial of Continuance Request**

The Company's first issue on appeal is whether the trial court abused its discretion in denying the Company's request for a continuance. The Company argues its continuance request was a first continuance request, which "is often freely granted as a formality." *See* Appellant's Br. at 11. The Company also argues it presented a valid reason for its continuance request and the trial court denied it the opportunity to present a defense. *Id.* at 11-12. Lastly, the Company, as a limited partnership, argues that since this Court refused to allow it to participate in this appeal without being represented by an attorney or *pro se* through its general partner,[7] the trial court, in allowing a non-attorney and non-general partner to represent the Company, deprived it of adequate representation of counsel. *Id.* at 11-14.

"Appellate review of a trial court's continuance decision is deferential." *Com. v. Brooks*, 104 A.3d 466, 469 (Pa. 2014). In other words, "The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be

---

[7] Upon recognizing that a non-attorney who identified himself as the Company's manager, not the Company's general partner, filed the Company's notice of appeal, reproduced record, and brief in this matter, this Court entered a rule to show cause order on June 14, 2023, directing the Company's purported manager to clarify his interest in the Company. *See* Order, 6/14/23 (citing *In re: Petition of Lawrence Cnty. Tax Claim Bureau*, 998 A.2d 675 (Pa. Cmwlth. 2010) (providing that, because a general partner assumes unlimited liability for obligations of the partnership, a general partner can prosecute and defend actions of the partnership in a pro se capacity); *Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 406 (Pa. 2021) (recognizing that an appellate court has an obligation to prevent the unauthorized practice of law)). When the Company's manager did not respond sufficiently to satisfy this Court he was the Company's general partner, we struck the appellant's brief and reproduced record and provided the Company with time to obtain counsel and file a counseled brief and reproduced record. *See* Order, 7/12/23; Order, 9/26/23. The Company then obtained counsel and filed a counseled brief and reproduced record.

reversed only upon a showing of an abuse of discretion." *Com. v. Randolph*, 873 A.2d 1277, 1281 (Pa. 2005) (citation omitted). A trial court does not abuse its discretion "merely [through] an error of judgment; rather, discretion is abused when 'the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.'" *Id.* (citations omitted).

In the trial court's opinion, which it filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) (Rule 1925(a) Opinion), the trial court asserted it denied the Company's request for a continuance because the Company had over two months to prepare for the hearing, the Commonwealth's witnesses were present, the Company had a knowledgeable witness present, and the Company failed to request a continuance in advance despite knowing its preferred witness would not be present. *See* Rule 1925(a) Opinion at 1-2.

The Company has not pointed to anything in the record to establish the trial court's judgment was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Randolph*, 873 A.2d at 1281 (citation omitted). In addition, the Company's arguments about Assistant Manager representing it at the trial court's hearing are not compelling for several reasons. First, the Company voluntarily sent Assistant Manager instead of submitting a written request for a continuance in advance. Second, Assistant Manager requested a continuance so the Company's manager could be present, not so the Company could obtain counsel or proceed *pro se* with its general partner.[8] The Company cites *Commonwealth v. Prysock*, 972

---

[8] The Company continues to refer to its manager as its general partner and takes the position that the trial court erred in not allowing a continuance so the Company's manager could be present. However, this Court still does not have proof that the Company's manager is its general partner. Furthermore, at the time of the hearing below, the concept of unauthorized practice of law was not

**(Footnote continued on next page…)**

A.2d 539 (Pa. Super. 2019),[9] to argue the trial court denied it a fair trial by denying its continuance request. The defendant in *Prysock*, however, requested a continuance for the purpose of obtaining new counsel. *Id.* Because the Company was not seeking counsel, *Prysock* is not applicable to this matter. Accordingly, we conclude the trial court did not abuse its discretion in denying the Company's continuance request.

## B. Private Criminal Complaint

The Company's second issue on appeal is whether PLI's private criminal complaints complied with the rules of criminal procedure. Specifically, the Company argues a PLI code enforcement official filed the private criminal complaints without approval from an attorney for the Commonwealth in violation of Pennsylvania Rule of Criminal Procedure 506(A).[10] *See* Appellant's Br. at 14-17. In its Rule 1925(a) Opinion, the trial court cited *Commonwealth v. Daugherty*, 829 A.2d 1273, 1277 (Pa. Cmwlth. 2003), to assert that a code enforcement officer is a law enforcement officer under Pennsylvania Rule of Criminal Procedure 402.[11] Rule 1925(a) Opinion at 2. Therefore, the trial court opined that code enforcement

_____

discussed by the trial court or Assistant Manager. Although the trial court should not have facilitated the unauthorized practice of law, the record is clear, both before the trial court and this Court, that the Company chose to litigate without the benefit of counsel which is a stark contrast from being deprived of the ability to advance with counsel.

[9] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Board of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[10] "When the affiant is not a law enforcement officer, [a private criminal] complaint shall be submitted to an attorney for the Commonwealth, who shall approve or disapprove it without unreasonable delay." Pa. R.Crim.P. 506(A).

[11] "Law enforcement officers shall ordinarily institute summary proceedings by citation." Pa. R.Crim.P. 402.

officers can file criminal complaints without needing the approval of an attorney for the Commonwealth. *Id.*

In *Daugherty*, a borough code enforcement officer issued a non-traffic citation to a commercial landowner for "failing to provide a sufficient supply of clean and potable water to his property" in violation of a building code which the borough had adopted by ordinance. *Daugherty*, 829 A.2d at 1274. A magisterial district judge found the property owner guilty and ordered him to pay a fine, costs, and restitution. *Id.* The trial court affirmed the magisterial district judge's decision. *Id.* On appeal to this Court, the property owner argued the trial court erred by not quashing the citation because the borough's code enforcement officer was not a "law enforcement officer" as that term is defined in the Pennsylvania Rule of Criminal Procedure 402. *Id.* at 1275.

In evaluating the property owner's argument, this Court in *Daugherty* began by noting that the comment to Rule 402 states:

> It is intended that a wide variety of officials will have the authority to issue citations and shall do so as provided in these rules. Such authority is, of course, limited by the extent of the enforcement power given by law to such officials.

*Daugherty*, 829 A.2d at 1275. Next, we noted that Pennsylvania Rule of Criminal Procedure 103 defines a "Law Enforcement Officer" as "any person who is by law given the power to enforce the law when acting within the scope of that person's employment." *Id.* Finally, we reviewed provisions of the Pennsylvania Construction Code Act (PCCA),[12] noting that the PCCA established municipalities would enforce it by designating a code official. *Id.* at 1277. Because the borough designated its code officer by local ordinance under the PCCA, we held the

---

[12] Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. §§ 7210.101-7210.1103.

9

borough's code officer had the power to enforce the borough's building code by law and, therefore, qualified as a "law enforcement officer" under the Rules of Criminal Procedure. *Id.*

Initially, we note that the City, which is a second class city, is not governed by the Pennsylvania Municipalities Planning Code (MPC).[13] *See* Section 107 of the MPC, 53 P.S. § 10107 (defining "cities" as "cities of the second Class A and third class."). Therefore, the MPC's restrictions, which limit zoning enforcement remedies to civil sanctions, do not apply to the City. Instead, the Second Class City Code[14] (SCCC) authorizes the City to enact zoning regulations. *See* Section 1 of the SCCC, Act of March 31, 1927, P.L. 98, 53 P.S. § 25051.

In furtherance of the City's authority under the SCCC, Section 924.04G of the Zoning Code expressly provides that "[a]ny person, firm, association, or corporation" that violates a provision of the zoning ordinance, "shall upon conviction be fined not more than one thousand dollars ($1,000.00) for each offense and costs, and in default of payment of such fine and costs, shall be imprisoned in the county jail or workhouse for not more than thirty (30) days." Because the Zoning Code provides for imprisonment for failure to pay an applicable fine, this matter is properly governed by the Pennsylvania Rules of Criminal Procedure. *See Town of McCandless v. Bellisario*, 709 A.2d 379, 381 (Pa. 1998).

Further, like we determined in *Daugherty*, the SCCC and the Zoning Code authorize enforcement of the Zoning Code by a City code official. Therefore, like in *Daugherty*, we conclude a city code official is a "law enforcement officer" under the Rules of Criminal Procedure. Because Rule of Criminal Procedure 506(A) only

---

[13] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[14] Act of March 7, 1901, P.L. 20, *as amended*, 53 P.S. §§ 22101-28707.

10

requires an attorney for the Commonwealth to approve private criminal complaints "[w]hen the affiant is not a law enforcement officer," we hold that Rule 506(A) is not applicable to this matter. Therefore, we reject the Company's arguments and conclude the City complied with the Rules of Criminal Procedure in filing its private criminal complaints.

## C. Burdensome Application Requirement

The Company's final issue on appeal is whether PLI imposed a burdensome application requirement by making the Company obtain a licensed architect or engineer to retroactively approve a land operations plan for its already completed clear-cutting activities. In support of this issue, the Company argues PLI imposed an "ex-post facto application of a permit requirement" which was "not supported by the [Zoning Code] and is a practical impossibility." *See* Appellant's Br. at 17-18. The Company, therefore, argues "[t]his is another abuse of discretion that requires remand." *Id.* at 18. In its Rule 1925(a) Opinion, the trial court briefly addressed the Company's argument, stating the Company "was not charged or convicted of this violation." Rule 1925(a) Opinion at 2.

The trial court was correct in its brief statement that the Company was not charged with a violation on this basis. Instead, the City appeared to have been willing to forgo prosecution if the Company had obtained a permit, even though the Company's violation of the Zoning Code already occurred. *See* S.A.T. at 32-37. Section 1003.05(b) of the Zoning Code requires all permit applications that include "[d]rawings other than plot plans, calculations and grading specifications" to be prepared by a registered professional and submitted under seal. In sum, the trial court was considering whether the Company was guilty of certain summary offenses. The Company was not charged with failing to obtain drawings from a licensed

11

architect or engineer. Whether the Zoning Code's requirement that applications include drawings from a registered professional was unduly burdensome was simply not before the trial court nor is it before this Court.

## IV. Conclusion

For the reasons set forth above, we affirm the trial court's November 9, 2021 order.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania    :
    :
    v.    : No.  1380 C.D. 2021
    :
RDHH LP,    :
    Appellant    :

## **O R D E R**

    **AND NOW**, this 26th day of March 2024, the November 9, 2021 order of the Court of Common Pleas of Allegheny County is **AFFIRMED**.


_____
STACY WALLACE, Judge