810 A.2d 1191

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Shawn LOCKRIDGE, Appellant.**

Supreme Court of Pennsylvania.

Argued May 15, 2002.

Decided Nov. 20, 2002.

Ronald M. Graham, Valley Forge, for appellant, Shawn Lockridge.

John Klingler, Mifflintown, for appellee, Com. of PA.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION

Justice CAPPY.

Based on information received from a witness, a deputy sheriff filed a citation charging Appellant Shawn Lockridge with a summary violation of the Vehicle Code, 75 Pa.C.S. § 101 *et seq.* We granted review to consider Appellant's

contention that pursuant to our decision in *Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299 (1994), the charge should have been dismissed because the deputy sheriff did not observe the violation and the violation did not amount to a breach of the peace. We conclude that *Leet* is inapt; that the Pennsylvania Rules of Criminal Procedure are controlling; and that under the Rules, the deputy sheriff was authorized to file the citation charging Appellant with the violation.[1] Thus, for all of the reasons that follow, we affirm the Superior Court's order, albeit on other grounds.

In September 1999, Appellant was charged with driving while under the influence of alcohol or controlled substance ("DUI"), a violation of 75 Pa.C.S. § 3731. As Appellant accepted Accelerated Rehabilitation Disposition ("ARD") for the charge, on January 18, 2000, his license was suspended for a six-month period. 75 Pa.C.S. § 3731(e)(6).

In May of 2000, Appellant was on probation for an unrelated conviction, and under the supervision of Mindy Musser ("Musser"), a probation officer for Juniata County, Pennsylvania. One of the conditions of Appellant's probation was a prohibition against operating a motor vehicle. Musser was aware that Appellant's driver's license was under suspension.

On the evening of May 10, 2000, Musser saw Appellant drive a motor vehicle into a restaurant parking area. The following morning, Musser told Shane Corwell, the Chief Deputy of the Juniata County Sheriff's Department, that she saw Appellant driving a motor vehicle the prior evening. Musser also gave Chief Deputy Corwell the plate number on

---

1. We note that the trial court and the Superior Court stated in their respective opinions, as do the parties in their respective briefs, that Chief Deputy Corwell issued the citation under Pa.R.Crim.P. 405. The record reveals, however, that Deputy Chief Corwell filed the citation under Pa.R.Crim.P. 410. The fact that the lower courts and the parties have proceeded as if Chief Deputy Corwell issued the citation under Pa.R.Crim.P. 405 does not have legal significance. The analysis of the questions this appeal raises applies to both a deputy sheriff's issuing a citation under Pa.R.Crim.P. 405 and his filing a citation under Pa. R.Crim.P. 410. Therefore, in the interests of judicial economy, we will dispose of this appeal, considering the issues raised in terms of the filing of a citation under Pa.R.Crim.P. 410.

and a description of the vehicle that she observed Appellant operating.

Chief Deputy Corwell submitted a request for information with the Commonwealth's Bureau of Driver Licensing and verified that Appellant's driver's license was under suspension for the DUI offense. He also verified that the vehicle with the plate number that Musser had given him was registered to Appellant. Based on the information he gathered, Chief Deputy Corwell followed the procedure set out in Pa.R.Crim. 410 and filed a citation (the "Citation") with the District Justice of Mifflintown, Pennsylvania, charging Appellant with driving while his license was suspended as a condition of ARD, a summary offense under 75 Pa.C.S. § 1543(b).[2] The District Justice issued a summons to Appellant. Appellant responded by pleading not guilty. Following a summary trial, the District Magistrate found Appellant guilty, and entered judgment of sentence on July 11, 2000, imposing a fine of $1,000 and a 90–day period of incarceration upon him.

Appellant appealed to the trial court. In his appeal, Appellant filed a motion to dismiss the charge, citing the *Leet* decision. *Leet,* 641 A.2d at 299. Appellant contended that *Leet* established that a deputy sheriff may enforce a Vehicle Code violation only if the violation was committed in his presence and involved a breach of the peace. Appellant asserted that these conditions from *Leet* were not met, and that accordingly, Chief Deputy Corwell did not have the authority to issue the Citation and charge him. The Common-

2. The Vehicle Code provides in relevant part:
   § 1543. Driving while operating privilege is suspended or revoked
   * * *
   (b) Certain offenses.—
   (1) Any person who drives a motor vehicle on any highway or trafficway of this Commonwealth at a time when their operating privilege is suspended or revoked as a condition of acceptance of Accelerated Rehabilitative Disposition for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) . . . shall, upon conviction, be guilty of a summary offense and shall be sentenced to pay a fine of $1,000 and to undergo imprisonment for a period of not less than 90 days.
   75 Pa.C.S. § 1543(b).

wealth responded that *Leet* and its progeny supported Chief Deputy Corwell's actions.

Following Appellant's summary appeal hearing, the trial court took his motion to dismiss under advisement. On October 11, 2000, the trial court denied the motion, found Appellant guilty of violating 75 Pa.C.S. § 1543(b), and entered judgment of sentence, re-imposing upon him the $1,000 fine and the 90-day period of incarceration.

In its opinion on the motion to dismiss, the trial court initially found that inasmuch as Appellant's case did not involve a stop and arrest scenario, as did *Leet*, the principles enunciated therein were inapplicable. Rather, Pa.R.Crim.P. 405 (then Pa.R.Crim.P. 55)[3], which governs the issuance of a citation, was to determine whether Chief Deputy Corwell was authorized to pursue Appellant's violation. Observing that the Comment to Rule 405 states that a law enforcement officer may issue a citation based upon information from a witness to a summary offense, the trial court concluded that the Citation was in full compliance with Pennsylvania law inasmuch as it "was issued by a law enforcement officer, [Chief] Deputy Corwell, based on information that [Appellant] committed a summary violation received from a very credible witness...." (Trial Court Memorandum Opinion of 10/11/00 at 2.)

Appellant filed a timely appeal with the Superior Court and re-asserted his position that under *Leet*, Chief Deputy Corwell was unauthorized to take action. Like the trial court, the Superior Court rejected Appellant's argument. *Commonwealth v. Lockridge*, 781 A.2d 168 (Pa.Super.2001). The Superior Court first noted that "the *Leet* Court did not address the legal issue of whether the deputy sheriff who issues the ticket must personally observe the violation for which he issues a citation." *Id.* at 169. The court then determined that "[t]he source for [Chief] Deputy Corwell's authority to issue the citation in question without having observed [A]ppellant driving a motor vehicle may be found in Pa.R.Crim.P. 405, Issu-

---

3. Effective April 1, 2001, Pa.R.Crim.P. 55 was renumbered Pa.R.Crim.P. 405 and Pa.R.Crim. 60 was renumbered Pa.R.Crim.P. 410. For the sake of clarity, this opinion will refer to the renumbered Rules.

ance of citation, and the comments thereto." *Id.* (footnote omitted). Applying the terms of Pa.R.Crim.P. 405 to the facts, and focusing on that portion of the Comment to the Rule which allows a law enforcement officer to use information received from a witness when issuing a citation, the Superior Court concluded that Chief Deputy Corwell was authorized to issue the Citation based on Musser's reported observations, and notwithstanding the fact that he did not personally witness Appellant's violation. *Id.* at 170. The court was also unpersuaded by Appellant's argument that *Leet* requires the commission of a breach of the peace before a citation may issue because such an interpretation of *Leet* would prohibit a deputy from enforcing the traffic violation of driving without a license, even if violated in his presence. Id. Accordingly, the Superior Court affirmed the trial court's judgment of sentence. Id.

This appeal followed. Appellant claims that the Superior Court erred as a matter of law by not applying *Leet* to the facts correctly. Alternatively, Appellant claims that the Superior Court's reliance on the Pennsylvania Rules of Criminal Procedure was misplaced. The Commonwealth contends just the opposite, arguing that both *Leet* and the Rules are sources of authority for Chief Deputy Corwell's actions.

■ We begin our discussion with *Leet.* The pertinent facts of that case are as follows. Having observed a vehicle pass a line of traffic stopped in a no-passing zone, Deputy Sheriff Kevin Gibbons directed the driver, Marshall Leet, to pull off the road. The Deputy Sheriff saw an open can of beer on the front seat as he approached the vehicle. The Deputy Sheriff administered a field sobriety test on Leet, and detained him, waiting for a radio check on his license status. The license status report revealed that Leet's license was expired. Accordingly, Municipal Police Officer Donald Weber, who had arrived on the scene to give assistance, issued citations to Leet for driving without a valid license, for driving in a no-passing zone, and for consuming an alcoholic beverage while his vehicle was in operation. *See* 75 Pa.C.S. §§ 1501, 3307, 3715.

The question we considered and answered in the affirmative in *Leet* was "whether a deputy sheriff has authority in Pennsylvania to make a warrantless arrest for motor vehicle violations committed in his presence." *Leet,* 641 A.2d at 299. In our discussion, we first recognized that it is the function of the sheriff and his deputies to enforce the law. *Id.* at 301–02. We then considered whether the sheriff and his deputies have the authority to take the law enforcement action that was at issue—a warrantless arrest for a Vehicle Code violation. We observed that under the common law, the sheriff and his deputies are empowered to make arrests without a warrant for felonies and breaches of the peace committed in their presence. *Id.* at 302–03. Thus, for purposes of determining whether the warrantless arrest before us was proper, we looked to see whether that common law power has been abrogated by statute, as opposed to looking for a statute that authorized such power. Finding no abrogation, we concluded that the sheriff and his deputies may make warrantless arrests for Vehicle Code violations committed in their presence which amount to breaches of the peace. *Id.* at 303. We also deemed it necessary that sheriffs and deputies who enforce the Vehicle Code be required to undergo formal training. *Id.*[4]

In order to resolve Appellant's claim that the principles articulated in *Leet* lead to the conclusion that Chief Deputy Corwell was not authorized to charge him by citation, the threshold question that we must answer is to what extent *Leet's* principles apply in this case. While our analysis in *Leet* establishes that as a general proposition, Chief Deputy Corwell, who was with the Juniata County Sheriff's Department, was authorized to enforce the law, *see Leet,* 641 A.2d at 301–02, the principles set out therein for answering the more specific question as to whether Chief Deputy Corwell was authorized to enforce the Vehicle Code by filing the Citation present another matter. This is because there is a fundamental difference between a warrantless arrest, the law enforce-

4. Appellant concedes that Chief Deputy Corwell met the training requirements of *Leet.* (Appellant's Brief at 7).

ment action that was undertaken in *Leet,* and the filing of a citation, the law enforcement action that was undertaken here.

The power to arrest, as *Leet* instructs us, emanates from the common law. *Id.* The filing of a citation, however, concerns a process that is among those set out in the Pennsylvania Rules of Criminal Procedure for commencing a summary action. The Rules are this court's prescriptions, adopted under Article V, § 10(c) of the Pennsylvania Constitution[5]. We have held that the Constitution's grant to this Court of rule-making authority is exclusive. *In re 42 Pa.C.S. § 1703,* 482 Pa. 522, 394 A.2d 444 (1978). Thus, a statute cannot abrogate any of the procedural rules this court has duly adopted. *See id.* Accordingly, the test enunciated in *Leet* and the parameters of a sheriff's common law arrest powers as discussed in that case have no present bearing. Rather, Chief Deputy Corwell's authority to file the Citation is wholly determined by reference to the Rules themselves.

Therefore, we conclude that the Superior Court was correct to distinguish *Leet* and apply the Rules to determine whether Chief Deputy Corwell had the authority to file the Citation. We also conclude that it was not necessary for the Superior Court to pass upon Appellant's contention regarding a breach of the peace as discussed in *Leet,* for that aspect of *Leet's* discussion has no relevance to an analysis of law enforcement authority which is premised on the Rules.

It now remains for us to determine whether the Rules authorized Chief Deputy Corwell to file the Citation. This raises a matter of rule construction. In this regard, we have mandated that "[t]o the extent practicable, [the Pennsylvania Rules of Criminal Procedure] shall be construed in consonance with the rules of statutory construction." Pa.R.Crim.P. 101(c). Accordingly, a Rule's words and phases are to be construed according to their common and approved usage, and where the

5. The Pennsylvania Constitution empowers this court to "prescribe general rules governing practice, procedure, and the conduct of all courts . . . if such rules are consistent with this Constitution and neither abridge, enlarge, nor modify the substantive rights of any litigant. . . ." Pa. Const. art. V, § 10(c).

words of a Rule are clear and free from ambiguity, the letter of the Rule may not be disregarded. *See* 1 Pa.C.S. §§ 1903(a),1921(b). Moreover, the explanatory comments of the committee which worked on a Rule may be consulted in its construction and application. *See, e.g. Commonwealth v. Lamonna,* 473 Pa. 248, 373 A.2d 1355, 1358 & n. 11 (1977).

The Rules which govern Chief Deputy Corwell's actions in filing the Citation concern the procedures to be used in summary cases. These procedures are designed to favor the least intrusive means of commencing a summary proceeding, and contemplate that summary cases will be instituted, not by arrest, but by the handing of a citation to a defendant at the time the offense is allegedly committed. *See* Introduction to Chapter 4 of the Rules (Procedure In Summary Cases) by the Criminal Procedural Rules Committee ("Committee"). These procedures also recognize, however, that the immediate issuance of a citation to a defendant is not always feasible, and provide for the filing of a citation with a district justice. *Id.*

■ Pa.R.Crim.P. 402 instructs that the persons who have the authority to issue or file citations in order to institute summary proceedings are "[l]aw enforcement officers." Pa. R.Crim.P. 103 defines a "Law Enforcement officer" as "any person who is by law given the power to enforce the law when acting within the scope of that person's employment."

Pa.R.Crim.P. 405 and Pa.R.Crim.P. 410, which respectively control the issuance and filing of a citation, work in tandem. Pa.R.Crim.P. 405 states that "[w]hen a criminal proceeding in a summary case is instituted by issuing a citation to the defendant, the law enforcement officer who issues the citation shall exhibit some sign of authority." Pa.R.Crim.P. 410 states that "when it is not feasible to issue the citation to the defendant ... a law enforcement officer shall institute a criminal proceeding in a summary case by filing a citation with the proper issuing authority." Finally, the Comment to Pa. R.Crim.P. 405, as well as its Comment to Pa.R.Crim.P. 410, which were prepared by the Committee, provide that a law enforcement officer may issue or file a citation, as the case

may be, based on information received from a witness to the summary violation.[6]

In contending that the Rules do not authorize Chief Deputy Corwell's actions, Appellant makes two arguments. Appellant's first argument is that insofar as *Leet's* conditions for making a warrantless arrest remain unsatisfied, the Chief Deputy does not meet Pa.R.Crim.P. 103's definition of a "law enforcement officer". This argument has no merit. As we have determined, those conditions from *Leet* are not presently relevant. *See supra* at pp. 1194–95. Moreover, in that we have established that the sheriff and his deputies enforce the law, *see Leet,* 641 A.2d at 301–02, Chief Deputy Corwell was a law enforcement officer within Pa.R.Crim.P. 103's plain meaning.

Appellant's second argument is that the Rules which govern citation procedures do not contemplate a deputy's use of citations based on information received from a witness. Appellant contends that the Committee's Comments to the Rules, which he concedes state otherwise, are not binding and must be disregarded. We disagree. Although the Comments are not part of the Rules and have not been officially adopted or promulgated by this court, *see* Comments to General Provisions of the Rules of Criminal Procedure, a court may rely on the Comments to construe and apply the Rules. *See, e.g. Commonwealth v. Lamonna,* 373 A.2d at 1358 & n. 11. We will be guided by the Comments to the Rules in this case.

Thus, we hold that Pa.R.Crim.P. 410 authorizes a deputy sheriff to file a citation for a Vehicle Code summary violation based on information received from a witness. We therefore conclude that Chief Deputy Corwell was authorized to file the

**6.** The Comment to Pa.R.Crim.P. 405 states that "[a] law enforcement officer may issue a citation based upon information that the defendant has committed a summary violation, which information may be received from a personal observation of the commission of the offense; a witness; [or] investigation...." The Comment to Pa.R.Crim.P. 410 states that the filing of a citation is appropriate where, for example, "a [law enforcement] officer receives information that the defendant has committed a summary violation from a witness but the defendant is not then present."

520

Citation charging Appellant with a 75 Pa.C.S. § 1543(b) violation.

Accordingly, the order of the Superior Court affirming the judgment of sentence is affirmed.

Chief Justice ZAPPALA concurs in the result.