J-A03045-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA,

Appellee

v.

JAMES DOUGLAS MORGENSTERN, JR.,

Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 982 MDA 2013

Appeal from the Judgment of Sentence of May 17, 2013
In the Court of Common Pleas of Bradford County
Criminal Division at No(s): CP-08-CR-0000570-2012

BEFORE:  PANELLA, OLSON AND PLATT,* JJ.

CONCURRING MEMORANDUM BY OLSON, J.:        **FILED AUGUST 01, 2014**

I concur in the result reached by the learned majority.  I write separately, however, because I believe that Appellant properly preserved his issues for appellate review and we should therefore reach his appellate claims.  Nevertheless, because I believe the trial court properly denied suppression, I agree that Appellant is not entitled to relief.

The learned majority does not reach the merits of this case, finding that Appellant's concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) was vague and, therefore, ineffective in preserving appellate review of Appellant's claims.  I disagree.  Two of the cases cited by the majority for the proposition that there is a bright-line rule pertaining to waiver deal with the timeliness of filing and the failure to

_____
*Retired Senior Judge assigned to the Superior Court.

include issues in a Rule 1925 statement. ***Commonwealth v. Castillo***, 888 A.2d 775, 780 (Pa. 2005) (re-affirming the bright-line rule first set forth in ***Commonwealth v. Lord***, 719 A.2d 306 (Pa. 1998) that in order to preserve a claim for appellate review, an appellant must **timely** file a court-ordered Rule 1925(b) statement and any issues **not raised** will be deemed waived.) (emphasis added); ***Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.***, 88 A.3d 222, 225 (Pa. Super. 2014) (en banc) ("[I]t is no longer within this Court's discretion to review the merits of an **untimely** Rule 1925(b) statement based solely on the trial court's decision to address the merits of those untimely raised issues. Under current precedent, even if a trial court ignores the **untimeliness** of a Rule 1925(b) statement and addresses the merits, those claims still must be considered waived[.]") (emphasis added).

Moreover, in ***Commonwealth v. Hansley***, 24 A.3d 410 (Pa. Super. 2011), a case also relied upon by the majority, this Court found three issues on appeal were waived because Hansley failed to specify those claims in his Rule 1925 statement. However, in that case, the trial court did not address those issues below. ***Hansley***, 24 A.3d at 415-416 ("Appellant did not specify his first, fourth, or fifth issues on appeal in his Rule 1925(b) statement and precluded the trial court's review of those claims as a result. Consequently, [this Court] deem[ed those] claims waived on appeal."). More specifically, on appeal Hansley was challenging: (1) the sufficiency of the evidence to support his conviction for robbery; (2) the Commonwealth's

- 2 -

questioning of Hansley outside the scope of direct examination; and (3) comments allegedly made by the Commonwealth regarding Hansley's truthfulness. *Id.* I believe that finding waiver on the basis of vagueness was proper therein, because Hansley did not: (1) specify how the evidence was insufficient or what element of the crime of robbery was not proven; (2) point to specific questions asked by the Commonwealth during its cross-examination of Hansley that exceeded the scope of direct examination; and (3) allege which comments the Commonwealth made about his truthfulness or how the trial court erred in allowing them. *Id.* The scenario in *Hansley*, however, is distinguishable from the current matter.

Regarding waiver premised upon a vague Rule 1925(b) statement, this Court has previously determined:

> Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process.
>
> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.
>
> In other words, a [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all. While [*Commonwealth v. Lord*, 719 A.2d 306 (Pa. 1998)] and its progeny have generally involved situations where an appellant completely fails to mention an issue in his [c]oncise [s]tatement, for the reasons set forth above we conclude that *Lord* should also apply to [c]oncise

> [s]tatements which are so vague as to prevent the court from identifying the issue to be raised on appeal. In the instant case, [Dowling]'s [c]oncise [s]tatement was not specific enough for the trial court to identify and address the issue [Dowling] wished to raise on appeal. As such, the court did not address it. Because [Dowling]'s vague [c]oncise [s]tatement has hampered appellate review, it is waived.

*Commonwealth v. Dowling*, 778 A.2d 683, 686-687 (Pa. Super. 2001). However, where a trial court opinion meaningfully addresses arguments presented in an otherwise vague Rule 1925(b) statement, judicial review is not hampered and we may reach the merits of the appeal. *See Commonwealth v. Smith*, 955 A.2d 391, 393 (Pa. Super. 2008).

Herein, upon review, although inartfully stylized as a motion, Appellant's Rule 1925(b) statement precisely identifies the issues Appellant challenges on appeal. Appellant's Rule 1925(b) statement is nine pages in length; however, Appellant clearly delineated the first four and one-half pages as a recitation of the underlying facts in the matter. Although superfluous, the factual recitation is not an impediment to review. The remaining portion of Appellant's Rule 1925 statement enumerates specific challenges to the trial court's refusal to grant his motion to suppress based upon the contention that the sheriffs exceeded their legal authority.

In particular, Appellant asserted that "[t]he Sheriff and his deputies exceeded the scope of their authority under *Commonwealth v. Dobbins*, 934 A.2d 1170 (Pa. 2007), in both interrogating Ms. Bouse and [Appellant] and conducting searches of [Appellant's] person and the trunk of his car

after confirming Ms. Bouse's health pursuant to a welfare check." Rule 1925(b) Statement, 6/14/2013, at 6, ¶ 31. Appellant further claimed that the sheriffs possess only limited powers to enforce criminal statutes and may make warrantless searches only when they personally witness a breach of the peace or a felony. *Id.* at 6, ¶ 32, *citing* ***Dobbins***, **supra**; ***Commonwealth v. Leet***, 641 A.2d 299 (Pa. 1994). Citing ***Commonwealth v. Marconi***, 64 A.3d 1036 (Pa. 2013), Appellant averred that a sheriff is not a police officer under the Motor Vehicle Code. *Id.* at 7, ¶ 33. Further, Appellant contended that the sheriffs did not "have the authority or jurisdiction to investigate and file complaints for criminal offenses." *Id.* at 7, ¶ 34. Moreover, Appellant asserted that there was no probable cause or exigent circumstances justifying a warrantless search of Appellant's person or vehicle and that the search was not incident to arrest because the sheriff never effectuated an arrest but only later issued a summons. *Id.* at 8, ¶ 40-41. Finally, Appellant avowed that he was officially detained when he gave consent to search his trunk, thus his consent was not voluntary. *Id.* at 9, ¶ 42.

As the majority acknowledges, Appellant filed his concise statement in a timely manner. *See* Majority Memorandum at 9, n.2. Moreover, as the foregoing establishes, Appellant clearly challenged the search of his person and vehicle, together with the subsequent issuance of a felony summons, based on the sheriffs' lack of authority. The trial court identified and addressed these issues in its Rule 1925(a) opinion. Hence, I would not find

waiver based upon vagueness and, instead, would reach the merits of Appellant's claims.

Turning to Appellant's claim that the deputy sheriffs in this case exceeded their authority and that the recovered evidence required suppression, our standard of review is as follows:

> An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Smith***, 85 A.3d 530, 534 (Pa. Super. 2014)(citation and bracket omitted).

I begin my analysis regarding the sheriffs' authority with the Pennsylvania Supreme Court's decision in ***Commonwealth v. Leet***, 641 A.2d 299 (Pa. 1994), which confirmed "the common law power of the sheriff to make arrests without warrant for felonies and for breaches of the peace committed in his presence." ***Id.*** at 303. In ***Leet***, the Supreme Court ultimately concluded "it is not necessary to find a motor vehicle code provision granting to sheriffs the power to enforce the code – sheriffs have had the power and duty to enforce the laws since before the Magna Carta; rather, it would be necessary to find an unequivocal provision in the code

abrogating the sheriff's power in order to conclude that the sheriff may *not* enforce the code." *Id.* (footnote omitted) (emphasis in original).

In 2002, our Supreme Court decided *Commonwealth v. Lockridge*, 810 A.2d 1191 (Pa. 2002), a case wherein a deputy sheriff issued a citation for a summary offense under the Motor Vehicle Code when the deputy did not personally observe the violation. In that matter, a probation officer witnessed Lockridge driving despite the fact that one of the conditions of his probation prohibited his operation of a motor vehicle. *Lockridge*, 810 A.2d at 1192. The Supreme Court noted that while the power of the sheriff to institute warrantless arrests emanated from common law as *Leet* instructs, "[t]he filing of a citation, however, concerns a process that is among those set out in the Pennsylvania Rules of Criminal Procedure for commencing a summary action." *Id.* at 1194. The Supreme Court examined Pennsylvania Rules of Criminal Procedure 103, 402, 405, and 410, and concluded that, when read in conjunction, a sheriff is a law enforcement officer as defined by Pa.R.Crim.P. 103 and may issue a summary citation by: (1) exhibiting a show of authority, or (2) based upon information received from a witness to the summary violation. *Id.* at 1195-1196.

In *Commonwealth v. Dobbins*, 934 A.2d 1170 (Pa. 2007), our Supreme Court again examined the history of a sheriff's authority in the Commonwealth in a case wherein deputies within a sheriff's department "conduct[ed] an independent investigation of a suspected methamphetamine manufactory, obtain[ed] a search warrant in furtherance of that

investigation, and effectuate[d] arrests for any offenses the investigation reveal[ed]." ***Dobbins***, 641 A.2d at 1171. The Supreme Court "recognized sheriffs' authority to arrest for breaches of the peace or felonies committed in their presence and to enforce the Vehicle Code[,]" but held "that sheriffs have only such independent investigatory authority to seek out evidence of wrongdoing that is committed outside of their presence as is expressly authorized by statute." ***Id.***

Here, Deputy Sheriff James L. Hart testified that he saw a car parked in a pull-off near Gillett's Bridge in Bradford County. N.T., 7/24/2012, at 5-6. An hour later, the Deputy Hart saw the car in the same location, with the drivers' side door open. ***Id.*** at 7. A woman, later identified as Appellant's girlfriend, was asleep in the drivers' seat. ***Id.*** at 7-8. When the deputy rustled her, she appeared "a little confused[,]" but told the deputy that Appellant had gone to get gas. ***Id.*** at 8-9. However, Deputy Hart noticed an empty gas can in the backseat; Appellant's girlfriend stated that there had been two and Appellant took one with him. ***Id.*** at 10. Next, Appellant jogged up to the scene, without a gas can. ***Id.*** at 11. Appellant and Deputy Hart knew each other. ***Id.*** at 11. When Appellant spoke to Deputy Hart, "his body movements, his speech patterns, everything just went bad – very very erratic, very jerky, very highstrung." ***Id.*** Deputy Hart told Appellant his girlfriend's story did not match his. ***Id.*** at 12. Meanwhile, Deputy Hart's partner, Deputy Sheriff Brian Weibert conducted a license plate search that revealed the license plate on Appellant's car was registered to another

vehicle, Appellant did not have registration for the vehicle, and Appellant's vehicle had not been inspected. *Id.* When told about the registration and inspection, Appellant claimed he "bought [the vehicle] from a buddy of [his] in New York." *Id.* at 13. Deputy Hart asked "is there anything illegal in this car?[;]" Appellant admitted "there's a rifle in the trunk." *Id.* at 14. With Appellant's consent, the deputy sheriffs used the keys to open the trunk and discovered a rifle. *Id.* at 17. Appellant confirmed that he was on probation, a fact already known to Deputy Hart. *Id.* at 14, 18. Deputy Hart "had County dispatch run through [Appellant's] criminal history, and it came back, yes, he's a convicted felon[.]" *Id.* at 19. Deputy Hart did not take Appellant into custody, but filed a complaint charging Appellant with one count of persons not to possess a firearm, 18 Pa.C.S.A. § 6105. *Id.* at 23-24.

Based upon my review of the record, I would conclude that Appellant is not entitled to relief based upon his challenge to the trial court's suppression order. The initial encounter with police was to determine the welfare of the occupants of a disabled vehicle. Later, the deputy sheriffs determined that there was a motor vehicle code violation when the license plate on Appellant's vehicle was determined to belong to another vehicle and Appellant did not have valid registration. Thereafter, Appellant volunteered information that there was a firearm in the vehicle and gave his consent to search. Based upon the foregoing, I believe the sheriffs possessed both the

authority and requisite constitutional justification to support the search and

eventual seizure of the rifle.

I note that Appellant was on probation at the time of the search.

> [I]t must be remembered that the very assumption of the institution of probation is that the probationer is more likely than the ordinary citizen to violate the law.
>
> *    *    *
>
> Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term probable cause a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable. Those interests warrant a lesser than probable cause standard here. When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable. The same circumstances that lead us to conclude that reasonable suspicion is constitutionally sufficient also render a warrant requirement unnecessary.
>
> In establishing reasonable suspicion, the fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate.  This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.

**_Commonwealth v. Moore_**, 805 A.2d 616, 619-620 (Pa. Super. 2002)

(internal citations, quotations, and brackets omitted).

Appellant's probationary status implies that in order to conduct a search, Deputy Hart had to have reasonable suspicion that criminal activity was afoot. In this case, Appellant's erratic behavior, inability to corroborate his girlfriend's recitation of events, and admission that the vehicle bore a license plate for another car amounted to reasonable suspicion to suspect criminal activity in order to effectuate a search.

Finally, Appellant argues that the sheriffs lacked the ability to issue a subsequent felony summons. The filing of a summons is set forth in the Pennsylvania Rules of Criminal Procedure for instituting proceedings in court cases. The Rules are adopted under Article V, § 10(c) of the Pennsylvania Constitution and the Constitution grants our Supreme Court exclusive rule-making authority. ***Kopko v. Miller*** , 892 A.2d 766, 777 (Pa. 2006) (citations omitted). "Accordingly, the test enunciated in ***Leet*** and the parameters of a sheriff's common law arrest powers as discussed in that case have no present bearing. Rather, [the deputy sheriff's] authority to file [a summons] is wholly determined by reference to the Rules themselves." ***Id.*** When we interpret our Rules of Criminal Procedure, we employ the same principles employed in the interpretation of statutes. ***See*** Pa.R.Crim.P. 101(C). "Every [rule] shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a). "When the words of a [rule] are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b).

- 11 -

The Supreme Court's decision in **Lockridge**, and my reading of the Rules of Criminal Procedure, support my conclusion that a sheriff may file a criminal complaint. Pursuant to Pa.R.Crim.P. 502 and 503, criminal proceedings may be instituted by filing a written complaint that is filed with the appropriate issuing authority. Pa.R.Crim.P. 502, 503. Pennsylvania Rule of Criminal Procedure 504 sets forth the contents of the complaint. Pa.R.Crim.P. 504. Rule 504 "sets forth the required contents of all complaints whether the affiant is a law enforcement officer,[1] a police officer, or a private citizen." Pa.R.Crim.P. 504, Comment. Moreover, "[w]hen the affiant is a private citizen, the complaint must be submitted to an attorney for the Commonwealth for approval." **Id.**, *citing* Pa.R.Crim.P. 506. Herein, upon review, the deputy sheriff, a law enforcement officer, followed all of the applicable rules in filing a criminal complaint. Deputy Hart, as affiant, filed the criminal complaint containing all of the required contents and a magistrate independently approved it.

In sum, I believe that Appellant preserved his claims for appellate review. However, I believe the sheriffs did not exceed their authority and, therefore, the trial court properly denied suppression. Accordingly, I, like the learned majority, would affirm Appellant's judgment of sentence.

_____

[1] "**Law Enforcement Officer** is any person who is by law given the power to enforce the law when acting within the scope of that person's employment." Pa.R.Crim.P. 103 (Definitions).